UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PHILLIP AVERY SCALES,

              Plaintiff,

v.                                    Case No. 19-cv-1382-pp

C.O. PATRICK NOONAN, MELISSA GONZALES,
BRADLEY FRIEND, DOUGLAS WEARING,
DEPUTY FOUNTAINE, DEPUTY JAECK,
RACINE COUNTY, RACINE POLICE DEPARTMENT
and CITY OF RACINE,

              Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S SECOND MOTION TO PROCEED WITHOUT PREPAYING FILING FEE AS UNNECESSARY (DKT. NO. 16), DENYING PLAINTIFF'S MOTION TO WAIVE INITIAL PARTIAL FILING FEE AS MOOT (DKT. NO. 10), DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 5), DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT AS UNNECESSARY (DKT. NO. 6) AND SCREENING AMENDED COMPLAINT (DKT. NO. 15)**

Plaintiff Phillip Avery Scales, representing himself, filed a complaint alleging that the defendants violated his civil rights under 42 U.S.C. §1983 when the defendants put him into the Segregation Housing Unit without reason. Dkt. No. 1. Before the court screened the original complaint, the plaintiff filed a motion to amend the complaint, dkt. no. 6, and an amended complaint, dkt. no. 15. At this early stage in the case, the rules allow the plaintiff to file an amended complaint without the court's permission. Fed. R. Civ. P. 15(a)(1). The court will deny his motion to amend the complaint as unnecessary and will screen the amended complaint.

      The plaintiff also has filed a motion to proceed without prepaying the

filing fee, dkt. no. 2; a second motion to proceed without prepaying the filing fee, dkt. no. 16; a motion to appoint counsel, dkt. no. 5; and a motion to waive the initial partial filing fee, dkt. no. 10. This order resolves those motions.

I. **Motions to Proceed Without Prepaying the Filing Fee and Motion to Waive Initial Partial Filing Fee (Dkt. Nos. 2, 10, 16)**

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to let an incarcerated plaintiff proceed with his case without prepaying the filing fee if he meets certain conditions. One of those conditions is that the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On September 23, 2019, the court ordered the plaintiff to pay an initial partial filing fee of $6.75 by October 14, 2019. Dkt. No. 4. On September 30, 2019, the court received from the plaintiff a motion to waive the initial partial filing fee. Dkt. No. 10. Then, on October 4, 2019, the court received the initial partial filing fee. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee. The plaintiff must pay the balance of the $350 filing fee as he is able.

When the plaintiff filed his amended complaint, he filed a second motion to proceed without prepaying the filing fee. Dkt. No. 16. This motion was not necessary and the court will deny it. Because the plaintiff paid the initial partial filing fee, the court also will deny as moot his motion to waive the initial partial filing fee.

II. **Screening the Complaint**

A. Federal Screening Standard

Under the Prison Litigation Reform Act, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d

3

824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. Allegations in the Complaint

The plaintiff has sued Racine County, the City of Racine, the Racine Police Department, Patrick Noonan, Melissa Gonzales, Deputy Fountaine, Deputy Jaeck, Bradley Friend and Douglas Wearing. Dkt. No. 15 at 1.

The plaintiff alleges that on October 11, 2014, as a result of lies being told about him by inmates in the Racine County Jail, Deputies Fountaine and Jaeck asked him about a shank that was found in a garbage can during a raid of the pod. Dkt. No. 15 at 3. The plaintiff refers to this as "incident #14-001406." Id. He also notes that this was his "first time ever being in jail and first time getting into trouble in jail." Id. The plaintiff says he told the deputies that he knew nothing about it, but that they lied and said that the shank with the screw was found by his bunk. Id. The plaintiff says that he responded that this was impossible; he alleged that it later turned out that the shank was found in a trash can approximately twenty feet from his bunk. Id. The plaintiff alleges that Fountaine and Jaeck lied and said that an inmate saw the plaintiff put the shank in the trash can. Id. The plaintiff explains that he immediately got scared, because that was a clear indication that the officers were lying and "trying to pin the shank" on the plaintiff. Id. at 3-4.

The plaintiff says that he started lying, thinking that if he just said the shank was his he wouldn't get charged and go to prison for something he didn't do. Id. at 4. He said he cooperated, but that "this manipulation and corruption started a snowball effect" of his constantly being "confined and unlawfully

4

placed into the hole" every time he went back to the jail between 2014 and 2019. Id. According to the plaintiff, every time he goes back to the jail, he goes straight from intake back "to the hole for the remainder of [his] jail stay." Id.

The plaintiff estimates that he's spent the equivalent of four years in "pieces of seg[regation] time," and that he's even been placed in medical segregation multiple times despite having no medical condition. Id.

The plaintiff asserts that for "numerous amounts of months in a row," he has not been written up for any issues. Id. The plaintiff says that C.O. Noonan and Sgt. Gonzales reviewed his file every week and "brainwashed and manipulated [him] into signing [his] discipline major write up." Id. The plaintiff says that he had "no clue what he [presumably Noonan] wanted" the plaintiff to sign, asking numerous questions "about what was that paper he brought [the plaintiff] to sign." Id. The plaintiff says he asked whether, if he signed the paper, he would get charged. Id. He says that "he"—again, presumably Noonan—said no; the plaintiff says he signed the paper because he was scared. Id. The plaintiff says he did not know that Noonan and Gonzales "were going to trap [him] in the hole for the rest of life." Id. He says that Noonan and Gonzales "dictate your status, where you are placed everything and they control all the segregation inmates." Id. He also asserts that they review the inmates every week and that Noonan "comes to the pods and lets you know if there is any change or what questions comments the inmates in seg have or anything we want from him and Gonzales to do for us since those 2 are the segregation inmates classification officers automatically." Id. at 4-5.

The plaintiff alleges that Noonan "has come and brainwashed me every week for years since 2014 and made me think I would be going back to the general population which were all lies." Id. at 5. He asserts that Noonan,

5

Gonzales and "the rest of classification lie and say that as you leave jail is how you come back which is a complete lie;" he claims that an inmate gets reclassified by a classification officer every time the inmate comes back to the jail. Id. He says that Noonan and Gonzales "unlawfully" put him back in administrative segregation with fewer privileges than medical segregation that he had when last he left the jail, and that he hasn't received a write-up explaining why. Id. He says he didn't commit an infraction or receive any major write-up. Id. The plaintiff acknowledges that for "maybe" one week in 2017 he was allowed back into the general population, but that after receiving "one 24 hour lockdown minor writeup" he was put back in the hole on twenty-three-hour lockdown. Id.

The plaintiff says that during this "5 years of this cycle" he couldn't get around the "treatment" because Noonan and Gonzales run classification, so he wrote several times to Captain Douglas Wearing, who was the old captain; the plaintiff asserts that Douglas never would answer his complaints. Id. He say he also wrote numerous times to the new captain, Bradley Friend, but that Friend "did nothing to stop [his] rights from being violated either." Id. The plaintiff argues that when Wearing was captain, the two helped "numerous people in situations like [his] get out of the hold and away from Noonans and Gonzales' grasp except [him]." Id. The plaintiff estimates that over the years, he has written more than thirty complaints to the various defendants and talked to Noonan face-to-face weekly for years, to no avail. Id. at 5-6.

The plaintiff says that "all of this treatment caused [him] to stand for [his] rights in other ways other than by writing and talking;" he admits that sometimes he was thinking and acting irrationally from being in segregation for months at a time. Id. at 6. He says that after realizing that Noonan and

6

Gonzales weren't going to allow him to leave segregation, and after seeing so many other people coming into and leaving segregation for fights and violence, "it started turning [his] mental and hopelessness set in which caused [him] to act and think irrational." Id. He said he tried to kill himself the hole, and that he received "multiple beatings from the CERT [Correctional Emergency Response Team] team." Id. at 6. The plaintiff says that he never struck any staff—he just refused to let them "take [him] down." Id. He alleges that he couldn't order food from the canteen for years, so he starved. Id. at 7. The plaintiff alleges that his various stays in segregation over five years has caused "everlasting mental, emotional, physical, [and] spiritual trauma." Id. The plaintiff seeks damages of $500,000,000. Id. He also demands that the defendants be fired from their jobs. Id.

C. Analysis

The plaintiff claims that the defendants violated his constitutional rights when they kept him in the segregation unit during various stays at Racine County Jail over a five-year period. While the plaintiff does not explicitly state which constitutional rights the defendants violated, his allegations suggest that he is alleging violations of the procedural due process clause of the Fourteenth Amendment and the Eighth Amendment prohibition on cruel and unusual punishment.

"The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." Isby v. Brown, 856 F.3d 508, 524 (7th Cir. 2017). Courts "undertake a two-part analysis in procedural due-process cases: first, we determine whether the plaintiff was deprived of a protected interest; if so, we determine what process was due under the circumstances." Hess v. Bd. of Treasurers of S. Ill. Univ., 839 F.3d 668, 673

7

(7th Cir. 2016). Prolonged segregation implicates an inmate's liberty interest where the duration and conditions of segregation are so severe that they outweigh the institution's interest in maintaining the safety and security of the prison population. Isby, 856 F.3d at 524. Short stays in segregation generally do not implicate an inmate's liberty interest because "[p]risoners do not have a constitutional right to remain in the general population." Id.

For prolonged stays in segregation, inmates are entitled to "an informal and nonadversary periodic review (the frequency of which is committed to the discretion of the prison officials) that keeps administrative segregation from being a pretext for indefinite confinement." Id. at 525. While informal, the periodic review must be meaningful and "'evaluate[] the prisoner's current circumstances and future prospects, and, considering the reason(s) for his confinement to the program, determine[] whether that placement remains warranted.'" Id. at 527 (quoting Toevs v. Reid, 685 F.3d 903, 913 (10th Cir. 2012)). The reviews "may not be frozen in time, forever rehashing information addressed at the inmate's initial Ad Seg determination." Id. at 528.

The plaintiff states he was initially placed in segregation because defendants Fountaine and Jaeck lied and said an inmate told them the plaintiff had a shank in his cell. Dkt. No. 15 at 3. But plaintiff admits that he went along with the story to avoid punishment and then the situation "snowballed," resulting in his placement in segregation. Id. at 4. The plaintiff does not say whether the jail gave him the opportunity to contest incident #14-001406—whether he was offered a hearing and an opportunity to testify. But the only allegation he makes against Fountaine and Jaeck is that they lied and that he went along with it. Lying is not, standing alone, a constitutional violation. While inmates are "entitled to be free from arbitrary

8

actions of prison officials," those arbitrary actions do not rise to the level of constitutional violations unless the inmate was deprived of due process in being sanctioned based on the alleged lies. See, *e.g.*, Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984) (citing Wolff v. McDonnell, 418 U.S. 539, 558 (1974)). The plaintiff says that, rather than fight the lies, he "went along with them." He has not alleged a due process violation against Fountaine and Jaeck and the court will dismiss them as defendants.

The plaintiff alleges that he was placed in segregation almost every time he was incarcerated at the Racine County Jail over the course of five years and continued to remain in segregation even when he had not committed infractions or been written up. Id. at 5. It is unclear how long each specific period of incarceration was, but at this stage in the litigation, the plaintiff has alleged a prolonged period in segregation. He also alleges that the conditions in segregation took a serious psychological and physical toll on him to the point where he was starving and suicidal. Id. at 7. The plaintiff has alleged that Noonan and Gonzales reviewed his placement weekly, but that the reviews were not meaningful. He also alleges that upon each re-entry to the jail, Gonzales and Noonan automatically place him in segregation from intake instead of reclassifying him. Because the plaintiff's allegations indicate a pretextual reason for keeping him in segregation indefinitely, and a lack of due process in determining his classification, he may proceed on a Fourteenth Amendment due process claim against Noonan and Gonzales.

Regarding the plaintiff's Eighth Amendment claim, the plaintiff did not explain whether he was a pre-trial detainee or a convicted prisoner at the time of these events. Given the plaintiff's allegations, the court will apply the Eighth Amendment standard because the Seventh Circuit has held that

9

"anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment." Lewis v. Downey, 581 F.3d 467, 475 (7th Cir. 2009).

The Seventh Circuit has recognized "that prolonged segregated confinement may constitute an Eighth Amendment violation in some instances." Giles v. Godinez, 914 F.3d 1040, 1051-52 (7th Cir. 2018). Whether the segregation violates the Eighth Amendment "depends on the duration and nature of the segregation and whether there were feasible alternatives to that confinement." Rice ex rel. Rice v. Corr. Med. Servs., 675 F.3d 650, 666 (7th Cir. 2012) (citations omitted). Essentially, this is a conditions-of-confinement claim under the Eighth Amendment. To successfully state a conditions-of-confinement claim, the plaintiff must allege that prolonged segregation, on an objective basis, includes conditions of confinement that "are sufficiently serious—*i.e.*, that they deny the inmate 'the minimal civilized measure of life's necessities,' creating an excessive risk to the inmate's health and safety." Isby, 856 F.3d at 521 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The plaintiff also must allege, on a subjective basis, that the defendant was deliberately indifferent to his health and safety. Giles, 914 F.3d at 1051. Where the prolonged segregation causes "serious physical, mental, or psychological harm," there is a possible Eighth Amendment violation. Isby, 856 F.3d at 523.

The plaintiff has alleged that being in segregation every time he was in jail for a period of five years caused him serious mental, emotional and physical trauma as well as very limited access to food. Dkt. No. 15 at 7. Again, while it is unclear from the complaint how long his various stays have been, at this stage the plaintiff's allegations satisfy the first prong of a conditions-of-

confinement claim. His allegations also satisfy the second prong. He states that Noonan and Gonzales kept him in segregation without justification despite his severe mental and physical deterioration. Id. at 6. The court will allow the plaintiff to proceed on an Eighth Amendment conditions-of-confinement claim against Noonan and Gonzales.

The plaintiff also alleges that he wrote former Captain Douglas Wearing and current Captain Bradley Friend about his placement in segregation, but that the complaints went unanswered. Supervisors can be held liable for constitutional violations where the violation happens at the supervisor's direction or with the supervisor's knowledge and consent. Hildebrant v. Ill. Dep't of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003). In other words, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Id. The plaintiff states that he informed both captains on numerous occasions about the placement in segregation and asked for their help, and they ignored him. At this stage, the plaintiff's allegations are sufficient to state both a Fourteenth Amendment and Eighth Amendment claim against Captains Wearing and Friend.

The plaintiff also names the Racine Police Department, the County of Racine and the City of Racine as defendants. He does not include any specific allegations against these entities. Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation." Hildebrant, 347 F.3d at 1039 (quoting Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996)). Because §1983 makes public employees liable "for their own misdeeds but not for anyone else's," Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir.2009), a plaintiff must specifically allege what each individual

11

defendant did (or did not do) to violate his constitutional rights.

Section 1983 also allows a plaintiff to sue a "person" who, acting under the color of law, violates his constitutional rights. The Racine Police Department and the County and City of Racine are not persons. There are some circumstances where a municipality can be sued under §1983. See Monell v. Dept. of Social Servs. of City of New York, 436 U.S. 658 (1978). For the Racine Police Department, Federal Rule of Civil Procedure 17(b) states that defendants in a federal lawsuit must have the legal capacity to be sued. State law determines an entity's capacity to be sued. Webb v. Franklin Cty. Jail, No. 16-cv-1284, 2017 WL 914736 at *2 (S.D. Ill. Mar. 8. 2017). Under Wisconsin law, the Racine Police Department "is not a legal entity separable from the county government which it serves," and is therefore not subject to suit under §1983. Whiting v. Marathon Cty. Sherriff's Dept., 382 F.3d 700, 704 (7th Cir. 2004). Regarding the County and City of Racine, these entities can be held liable only where the plaintiff alleges that "his injury was the result of the municipality's or corporation's official policy or custom." Rice, 675 F.3d at 675. The plaintiff has not made any allegations regarding specific policies or customs that violated his rights. At most, he alleges that the individual correctional officers failed to follow the established policy of reclassifying inmates each time the arrive at the jail. Th plaintiff has not stated a claim under §1983 upon which relief can be granted, and the court will dismiss the Racine Police Department, the County of Racine and the City of Racine as defendants.

### III. Motion to Appoint Counsel (Dkt. No. 5)

The plaintiff also filed a letter which included a request for the court to recruit counsel for him, along with copies of letters he sent to attorneys asking

them to represent him. Dkt. No. 5. The court will construe this as a motion to appoint counsel. The court notes that the plaintiff filed this letter in this case and in Case No. 19-cv-1360. In the future, even if the plaintiff is seeking the same relief in more than one case, he must file a separate motion in each case, bearing only the case number for that particular case. If the plaintiff continues to file a single motion for multiple cases, the court has the discretion to refuse to rule on the motion, or to consider it only in one case.

The plaintiff's letter indicated that he was in the hole and that there was "only so much [he] could do from [his] cell or hour out." Dkt. No 5 at 1. He says he has tried to find a lawyer as best he could, but that it would be better if the court could assign him one. Id. He asks for a copy of the local rules and the Federal Rules of Civil Procedure. Id. He also says that he does not know how to file motions to extend deadlines, and that while he doesn't plan to intentionally miss any deadlines, he figures getting a lawyer sooner rather than later would be best. Id.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case,

13

does the plaintiff appear competent to litigate it himself?'" Pennewell v. Parish et al., 923 F.3d 486, 490 (7th Cir. 2019), (quoting Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chicago Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

In particular, the lawyers' responses may have bearing on the court's decision to exercise its discretion because they may shed light on whether the plaintiff's attempts to hire counsel were reasonable. Pickett, 930 F.3d at 871. In deciding whether to recruit counsel, the court should consider the reasons the lawyer declined representation, including whether the plaintiff was unwilling (as opposed to unable) to pay a retainer; whether the lawyer lacked time or capacity to take on new clients; or whether the subject matter of the case requires a lawyer who specializes in a specific area of law. Id. The court should also consider how well the plaintiff articulated his case to the prospective lawyer. Id. Where a plaintiff "conveyed his situation well and counsel deemed the claim feeble, then it would be inappropriate for a court to intervene" and recruit counsel. Id. But, where a plaintiff is inarticulate, then a court "may have a useful role to play in recruiting counsel." Id.

When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell, 923 F.3d at 490. The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id.

14

This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett 930 F.3d at 871.

The plaintiff attached to his motion five Inmate Request/Complaint forms, dated between September 16 and September 18, 2019. Dkt. No. 5-1. It is not clear to whom he sent these requests—usually an inmate request form goes to the jail staff. The language of some of the forms implies that the plaintiff may have thought he was sending these forms to lawyers, including several members of the state public defender's office and one civil lawyer. Id.

The court acknowledges that the plaintiff tried to find a lawyer. He should have written letters directly to the lawyers, rather than asking the jail to forward the requests. Further, public defenders can represent only defendants charged in criminal cases. They cannot represent civil plaintiffs. There is no civil equivalent of the public defender's office for plaintiffs with no money who want to file civil cases.

Even if the plaintiff had written directly to three or more civil lawyers asking them to represent him, the court would not grant his request to appoint him a lawyer at this stage. The plaintiff says he wants a lawyer so that he can comply with the Federal Rules of Civil Procedure, the Civil Local Rules and the deadlines the court may set. The clerk's office sent the plaintiff a copy of the

15

Local Rules and a copy of the court's Frequently Asked Questions pamphlet in response to the plaintiff's request in <u>Scales v. Noonan</u>, Case No. 19-cv-1382 (Dkt. No. 7). The court cannot send a copy of the Federal Rules of Civil Procedure to every incarcerated plaintiff—the rule book is large, heavy and expensive.

If the plaintiff needs more time to do something, he needs only to write to the court, *before* the deadline for doing whatever he is supposed to do expires, and ask the court for more time. He should tell the court why he needs more time and how much more time he needs. That's it. The court is confident the plaintiff can do this, because he writes clearly and understandably. The court was able to understand the plaintiff's allegations about what happened to him—he provided the who, what, when, where and why of those events so that the court could screen his complaint and determine whether he had stated a claim for which a federal court could grant relief.

The court will direct the defendants to respond to the complaint. Once the defendants have responded, the court will issue a scheduling order giving everyone deadlines for exchanging information about the case. At that point, the plaintiff may ask the defendants to answer his interrogatories (written questions) and to turn over to him any reports, records, documents or videos that he needs to prove his claims. Federal Rules of Civil Procedure 33, 34. A person does not need legal training to ask the other side questions about his case or to ask for documents or evidence that he believes will help him prove it, and the rules require the other side to answer the questions and provide the evidence unless the court says otherwise.

Because the case is in its early stages and because thus far the plaintiff has done well communicating with the court, the court will deny his motion

16

without prejudice (meaning that he can renew it if things change).

### IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES** as unnecessary the plaintiff's second motion to proceed without prepaying the filing fee. Dkt. No. 16.

The court **DENIES AS MOOT** the plaintiff's motion to waive the initial partial filing fee. Dkt. No. 10.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 5.

The court **DENIES** as unnecessary the plaintiff's motion to amend the complaint. Dkt. No. 6

The court **DISMISSES** defendants Deputy Fountaine, Deputy Jaeck, the Racine Police Department, the County of Racine and City of Racine from this case.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendants Patrick Noonan, Melissa Gonzales, Bradley Friend, and Douglas Wearing under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** that defendants Noonan, Gonzales Friend and Wearing must file a responsive pleading to the complaint.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The plaintiff must submit the original of each document he files in the case to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 28th day of September, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**